UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER J. SAKOL, M.D., | : | **CIVIL NO. 1:06-CV-0735** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

I. Background and Procedural History.

The plaintiff, Peter J. Sakol, M.D., commenced this action by filing a complaint in the Court of Common Pleas of Dauphin County, Pennsylvania.  On April 7, 2006, the defendant, Nationwide Mutual Insurance Company, removed the case to this court.

On May 1, 2006, the plaintiff filed an amended complaint.  The amended complaint contains two counts.  Count I is a breach of contract claim based on the defendant's failure to pay wage loss benefits under the terms of an automobile insurance policy issued by the defendant to the plaintiff.  Count II is a bad faith claim pursuant to 42

Pa.C.S.A. § 8371 based on the defendant's denial of wage loss benefits and based on the defendant's handling of the plaintiff's claim for wage loss benefits.

The defendant filed an answer to the amended complaint on May 11, 2006.  The case is on Judge Conner's September 10, 2007 trial list.

Currently pending is a motion for summary judgment filed by the defendant on March 15, 2007.  The motion has been fully briefed and is the subject of this Report and Recommendation.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, though the non-moving party must make a showing

2

sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 580 (3d Cir. 2003). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

III. Undisputed Facts.

The following facts are not in dispute for purposes of the pending motion for summary judgment.

3

This lawsuit arises out of a claim by the plaintiff for insurance benefits following a June 4, 2001 automobile accident. *Defendant Nationwide's Statement of Material Facts Pursuant to Local Rule 56.1 at ¶1 and Plaintiff's Statement of Material Facts at ¶1.* As a result of the accident, the plaintiff suffered bodily harm and has been obliged to receive and undergo medical attention and care. *Id. at ¶3.*

The plaintiff was insured under an insurance policy issued by the defendant which provided for $100,000 in first party income loss benefits. *Id. at ¶2.* The income loss benefit provision of the policy provides:

> If this option is selected by payment of premium, **we** will pay for loss of income from work the **insured** was unable to do because of **bodily injury. We** will not pay under this benefit until five working days have been lost. **We** will not pay for these five days of lost income.
>
> "LOSS OF INCOME" means:
>
> a) 80 percent of actual loss of gross income. Gross income is income received from work performed while normally employed in gainful activity.
>
> b) reasonable expenses actually incurred for hiring a substitute to perform self-employment services in order to reduce the loss of gross income or for hiring

> > special help which permits a person to
> > work and reduce loss of gross income.
>
> > **We** will pay such benefits up to the limit
> > shown on the Declarations.  However, the total
> > limit of this benefit is subject to the
> > monthly maximum shown on the Declarations.
>
> > Income loss benefits do not continue after a
> > person dies.

*Doc. 17, Exhibit 3 at Policy p.10 (emphasis in original).*


Within a day of the accident, the plaintiff was contacted by the defendant. *Defendant Nationwide's Statement of Material Facts Pursuant to Local Rule 56.1 at ¶5 and Plaintiff's Statement of Material Facts at ¶5.*  The plaintiff recalls discussing lost income coverage with Karla Berger, a claims adjuster with the defendant, during their initial conversation, which occurred within 24 hours of the accident. *Id. at ¶6.*   The plaintiff testified that Berger told him during this conversation that he was ineligible for income loss benefits. *Id. at ¶8.*


The plaintiff's income actually increased in the years following the accident. *Id. at ¶10.*

IV.  Discussion.

A. Breach of Contract Claim.

The defendant contends that it is entitled to summary judgment on the plaintiff's breach of contract claim because the plaintiff has not presented evidence of an actual loss of gross income as required to support a claim for income loss benefits under the policy.

"An injured person may recover income loss benefit[s] by showing that "but for" the accident, he or she would have worked and earned income." *Persik v. Nationwide Mutual Ins. Co.,* 554 A.2d 930, 931 (Pa. Super. Ct. 1989)(holding that an person who was unemployed at the time of an accident may nevertheless assert a claim under the Pennsylvania Motor Vehicle Financial Responsibility Law for income loss benefits), *appeal denied,* 563 A.2d 499 (Pa. 1989).  "Recovery of income loss benefits based upon 'actual loss of gross income' requires only that the loss of income be 'real,' that is that it have 'a valid objective existence as opposed to that which is merely theoretical or possible.'" *Id.* at 932 (citing *Black's Law Dictionary* (5th ed. 1979)).  "Under this standard, there can be

6

no recovery for lost income merely because there has been a
loss of earning capacity." *Id.*  Rather, recovery "must be based
upon a real, actual loss of income which would have been earned
"but for" injuries received in the accident." *Id.*

     The plaintiff has presented his own affidavit in
support of his claim for income loss benefits.  In his
affidavit, the plaintiff states *inter alia* that he is a self
employed medical doctor with a speciality in ophthalmology and
ocular plastic surgery, that the injuries that he received in
the accident cause him pain which prevents him from working a
full schedule, that as a result of his injuries he can not work
as much as he would have worked if he had not been injured,
that when he is prevented from working because of his injuries
he is losing income that he would have earned if he were able
to work, and that he has lost income as a result of his
inability to work because of the injuries that he sustained in
the accident.  *Doc. 20, Exhibit J.*  The plaintiff has also
presented the following evidence in support of his claim for
income loss benefits: 1) a report from his treating physician
detailing the injuries he received in the accident and noting
that these injuries cause restrictions on his ability to work;
2) schedules listing partial days when he was unable to work as

a result of his injuries; 3) a listing of the surgeries that he asserts that was unable to perform or assist with as a result of his injuries; and 4) two expert reports setting forth the amount of income he purportedly lost as a result of his injuries.  *Doc. 20, Exhibits A - E.*

Based on the evidence presented by the plaintiff, a reasonable jury could conclude that as a result of the accident the plaintiff suffered an actual loss of gross income. Accordingly, it will be recommended that the defendant's motion for summary judgment be denied as to the plaintiff's breach of contract claim.

B. Bad Faith Claim.

The defendant contends that it is entitled to summary judgment on the plaintiff's bad faith claim because the plaintiff never made a claim for income loss benefits, because the plaintiff is not entitled to income loss benefits, because the plaintiff failed to presented clear and convincing evidence that it acted in bad faith and because the plaintiff's bad faith claim is barred by the statute of limitations.

8

A bad faith claim under 42 Pa.C.S.A. § 8371 is governed by a two-year statute of limitations. *Haugh v. Allstate Ins. Co.,* 322 F.3d 227, 236-37 (3d Cir. 2003)(predicting the that Pennsylvania Supreme Court would hold that a bad faith action under § 8371 sounds in tort and thus is subject to a two-year statute of limitation). "In general, the statute of limitations begins to run when a right to institute and maintain suit arises." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 224-25 (3d Cir. 2005). "A bad faith claim arises upon a 'frivolous or unfounded refusal to pay proceeds of [a] policy.'" *Id.* at 225.

In the instant case, it is not clear on precisely what date the plaintiff's right to institute and maintain suit arose. The defendant asserts that the plaintiff never made a claim for income loss benefits and that, therefore, it never denied such a claim. The plaintiff, on the other hand, asserts that he did make a claim for income loss benefits.

The plaintiff points to a conversation he had with Karla Berger which occurred within 24 hours of the accident. He asserts that they discussed income loss benefits and that Berger told him during this conversation that he was ineligible

9

for income loss benefits.  If the conversation with Karla
Berger is determined to be the date of the denial of income
loss benefits by the defendant, then, absent tolling, the
statue of limitations bars the plaintiff's bad faith claim
because that conversation was in June of 2001 and the plaintiff
did not commence this action until March of 2006.

The plaintiff also points to an Application for
Benefits that he completed on or about June 16, 2001 and in
which he answered questions regarding work loss. *See Doc. 20,
Exhibit F.*  The defendant asserts that the Application for
Benefits does not amount to a claim for income loss benefits.
Consistent with the defendant's position that the Application
for Benefits does not constitute a claim for income loss
benefits, the defendant never formally indicated that it was
denying the plaintiff income loss benefits.  Assuming *arguendo*
that the Application for Benefits did constitute a claim for
income loss benefits, absent tolling, the statute of
limitations nevertheless bars the plaintiff's bad faith claim.
The plaintiff may wait a reasonable period for the defendant to
act on his claim.  However, at some point it would have become
clear to a reasonable person that the defendant was not going
to act on his claim or provide income loss benefits.  It is at

10

this point that the plaintiff's right to institute and maintain suit arose.  Without pinpointing this date exactly, it is clear that the plaintiff's right to institute and maintain suit arose a reasonable period of time after he filed his Application for Benefits and that his right to institute and maintain suit arose prior to two years before he, in fact, commenced this action in 2006.  Thus, absent tolling, the statute of limitations bars the plaintiff's bad faith claim.

The plaintiff contends that the defendant presented false and misleading information to him about the policy which left him with the mistaken impression that he was not eligible for income loss benefits under the policy and that, pursuant to the discovery rule, his claim did not arise until he learned through his counsel of the defendant's bad faith.

Although the general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises, "Pennsylvania law recognizes that 'in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured.'" *Haugh, supra,* 322 F.3d at 231 (quoting *Crouse v. Cyclops Industries,* 745 A.2d

606, 611 (Pa. 2000)).  "In such cases, the discovery rule applies." *Id.*   "'The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct.'" *Id.* (quoting *Crouse, supra,* 745 A.2d at 611).  "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple v. Brown,* 701 A.2d 164, 167 (Pa. 1997).

A court presented with an assertion that the discovery rule is applicable, "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." *Fine v. Checcio,* 870 A.2d 850, (Pa. 2005).  "Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it." *Id.*  However, where reasonable minds could not differ in finding that a party knew of or should have known by the exercise of reasonable diligence

of his injury and its cause, the court may determine that the discovery rule does not apply as a matter of law. *Id.*

The plaintiff in this case contends that he did not learn that he was eligible for income loss benefits until his present attorneys so advised him in 2006.

The fact that a plaintiff is not aware that the defendant's conduct is wrongful or legally actionable is irrelevant to the discovery rule analysis. *Caro v. Glah,* 867 F.2d 531, 534 (Pa.Super.Ct. 2005). "For the statute of limitations to run, a plaintiff need not know the 'exact nature' of his injury, as long as it objectively appears that the plaintiff 'is reasonably charged with the knowledge that he has an injury caused by another.'" *Mest v. Cabot Corp.,* 449 F.3d 502, 510-11 (3d Cir. 2006)(quoting *Ackler v. Raymark Indus., Inc.,* 551 A.2d 291, 293 (Pa.Super. Ct. 1988)).

We conclude that a reasonable trier of fact could only conclude that the plaintiff knew or reasonably should have known more than two years before he commenced this action that he was injured by the defendant's failure to pay him income loss benefits. Accordingly, the plaintiff's bad faith claim is

13

barred by the statute of limitations, and it will be recommended that the defendant's motion for summary judgment be granted as to the plaintiff's bad faith claim.[1]

V. Recommendation.

Based on the foregoing, it is recommended that the defendant's motion (doc. 16) for summary judgment be granted in part and denied in part.  It is recommend that the defendant be granted summary judgment on the plaintiff's bad faith claim but that the defendant be denied summary judgment on the plaintiff's breach of contract claim.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: April 27, 2007.

_____

[1] Because we conclude that the defendant is entitled to summary judgment on the plaintiff's bad faith claim on the basis of the statute of limitations, we do not address the defendant's other arguments for why it should be granted summary judgment on the bad faith claim.

14